**David FRANK, Relator,**

v.

**HEARTLAND AUTOMOTIVE SERVICES, INC.,**
**Respondent,**

**Department of Employment and Economic Development,**
**Respondent.**

No. A06–2217.

Court of Appeals of Minnesota.

Jan. 15, 2008.

David Frank, Big Lake, MN, pro se.

Heartland Automotive Services, Inc., Omaha, NE, for respondent.

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by DIETZEN, Presiding Judge; ROSS, Judge; and HARTEN, Judge.*

## OPINION

ROSS, Judge.

This case arises from an automobile-service manager's fraudulent charge to a customer for a service that the manager knew had not been performed. David Frank appeals from an unemployment-law judge's finding that Frank was discharged for employee misconduct and was therefore disqualified from receiving unemployment benefits after his employer discharged him for the fraudulent charge. Frank denies knowing that the service had not been performed, and he alternatively contends that if he did knowingly charge the customer incorrectly, it was merely an isolated incident that is excepted from employment misconduct. Because we hold that substantial evidence supports the unemployment-law judge's finding that Frank intentionally charged the customer for a service that Frank knew was never performed, and because an employee's fraudulent charge to his employer's customer is not the kind of single incident that is excepted from misconduct under the statute, we affirm the decision that Frank committed disqualifying employee misconduct.

## FACTS

David Frank worked as a store manager for Heartland Automotive Services at a Jiffy Lube store in Monticello. On May 27, 2006, Frank sold a customer a "signature service" oil change, serpentine belt service, and transfer-case service. Frank asked employee Jon Shinnick to perform the requested services, but Shinnick soon informed Frank that he would be unable to perform the transfer-case service because the vehicle's structural design made it impossible. Frank came to the service bay to examine the vehicle, and he determined that Shinnick was correct; the car's design prevented access. Frank told Shinnick to proceed without doing the transfer-case service, and he informed two other em-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

ployees that the transfer-case service could not be performed.

Shinnick completed the other services. As Frank was preparing the invoice, assistant manager Jake Zoccoli reminded Frank that the transfer-case service had not been performed. Frank expressed disappointment, noting that transfer-case service was one of the "big nine," which is a group of services that employees are encouraged to sell and that entitle them to bonuses. But the invoice that Frank completed charged the customer for the transfer-case service, and the customer paid in full. Another employee later pointed out to Zoccoli that the company computer reflected the charge for the transfer-case service. Zoccoli spoke with Shinnick, who confirmed that he had not performed that service. Zoccoli reported the discrepancy to the district manager.

It violates Heartland's code of conduct for an employee to create a false invoice or include unperformed services on an invoice to increase statistics or to deceive a customer or the company. Heartland investigated Zoccoli's report and then discharged Frank for falsifying an invoice and charging a customer for a service that was not performed.

Frank sought unemployment benefits from the Department of Employment and Economic Development, and Heartland opposed the request, contending that it had discharged Frank for employment misconduct. An unemployment-law judge (ULJ) conducted a hearing in September 2006 to decide the issue. Frank contended that he had not intentionally billed the customer for the transfer-case service, which he admitted was not performed on the customer's car. The ULJ found that Zoccoli's inculpatory testimony was more credible than Frank's denial and that the preponderance of the evidence showed that Frank knew that the transfer-case service was not performed but billed to the customer regardless. He found that Frank's action exposed Heartland to liability for fraud and possible property damage and demonstrated a substantial lack of concern for Heartland. The ULJ concluded that Heartland terminated Frank's employment for employee misconduct and that Frank was therefore disqualified from receiving unemployment benefits. Frank requested reconsideration and the ULJ affirmed. This certiorari appeal follows.

## ISSUES

I. Is the unemployment law judge's decision that Frank intentionally and fraudulently billed a customer supported by substantial evidence?

II. Does Frank's single act of intentional and fraudulent billing constitute employee misconduct?

## ANALYSIS

### I

■■■■ Frank challenges the ULJ's factual determination that led to the conclusion that Heartland discharged him for employment misconduct. He specifically disputes the finding that he intentionally billed a customer for work that was not performed on the customer's car. A person who is discharged from employment is eligible to receive unemployment benefits unless discharged for misconduct. Minn. Stat. § 268.095, subd. 4 (2006). Whether an employee has committed misconduct is a mixed question of fact and law. *Schmidgall v. FilmTec Corp.*, 644 N.W.2d 801, 804 (Minn.2002). It is a question of fact whether the employee committed a particular act, and this court reviews an unemployment law judge's findings of fact in the light most favorable to the decision. *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 344 (Minn.App.2006). This court will not

interfere with those factual findings when they are supported by substantial evidence. *Id.*

The record supports the ULJ's factual determination that Frank knew the transfer-case service was not performed and that he knowingly charged the customer for the service anyway. Frank admits that the customer requested a transfer-case service and that it was never done. He admits that he knew that the technician he assigned to perform the service could not perform it. That technician, Jon Shinnick, stated that Frank not only knew that Shinnick could not perform the service but that Frank told him that service could not be performed. And Jake Zoccoli testified that, less than one minute before Frank finalized the bill, he reminded Frank that the service had not been performed. He also testified that Frank was upset that the transfer-case service could not be done. The ULJ rejected Frank's argument that if he charged the customer incorrectly, it resulted from his mere clerical mistake. We generally defer to the ULJ's credibility assessments and weighing of the evidence. *Id.* The ULJ reasonably chose not to credit Frank's testimony. Based on that credibility assessment, the ULJ found that Frank knew that the service was not performed but that he knowingly charged the customer anyway. This finding is well supported by the record.

## II

Frank also challenges the ULJ's legal conclusion that the fraudulent billing constitutes misconduct. This court reviews de novo the ULJ's conclusion that Frank's act was employee misconduct. *Schmidgall*, 644 N.W.2d at 804. Employee misconduct is defined as "any intentional, negligent, or indifferent conduct, on the job or off the job (1) that displays clearly a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee, or (2) that displays clearly a substantial lack of concern for the employment." Minn.Stat. § 268.095, subd. 6 (2006). Frank cites the statutory exception that some single incidents may not constitute misconduct, and he highlights that his misbilling was only a single incident. It is true that a single act that does not have a significant adverse impact on the employer is excepted from employee misconduct. *Id.* But we conclude that even a single fraud on an employer's customer is not an excepted act because customer fraud may be presumed always to have a significant adverse impact on the employer.

Frank's fraudulent billing does not qualify as an exception to employee misconduct as an isolated incident. In *Skarhus*, we held that even a single incident of a cashier's theft from her employer has a significant adverse impact on the employer, despite the small amount of the theft, because the employer could no longer entrust the employee with responsibilities necessary to carry out her duty as a cashier. *Skarhus*, 721 N.W.2d at 344. In that case, we noted that the employee's conduct must be considered in the context of her job responsibilities, and we specifically referenced the employee's responsibility to handle the money of the employer "and its customers and to accurately account for items sold to customers." *Id.* For the purposes of applying the single-incident exception to employee misconduct as set forth in section 268.095, subdivision 6, a cashier's theft from her employer and a service manager's theft from his employer's customer carry the same fundamental, significant impact on the employer. They equally undermine the employer's ability to assign to the employee tasks necessary to an essential function of the employee's

position. Regardless of the amount or frequency of the employee's fiduciary failing, this sort of integrity-measuring conduct will always constitute an act that has a significant adverse impact on the employer, who can no longer reasonably rely on the employee to manage the business's financial transactions. We therefore conclude that Frank's fraudulent charge to Heartland's customer constitutes a single act with a significant adverse impact on his employer.

Frank also argues that Heartland arbitrarily selects which policy violations to punish, and which not to. *See Bautch v. Red Owl Stores, Inc.*, 278 N.W.2d 328, 331 (Minn.1979) ("An employer's condonation of an employee's wrongful conduct is a mitigating factor which may cause the employer to waive its right to discharge the employee on the basis of such misconduct."). But he presented the ULJ with no evidence that Heartland condones charging customers for services not performed. Frank's claim that Heartland previously encouraged employees to charge customers for a full service after performing only partial service was unconvincing to the ULJ and is therefore insufficient to show that Heartland waived its right to challenge Frank's request for unemployment benefits after it discharged him for billing a customer for a service that he knew was not performed.

## DECISION

We affirm the ULJ's decision because the record supports the finding that the employee knowingly charged a customer for a service that the employee knew was not performed and because fraud on the customer does not qualify as a statutory single-incident exception to employment misconduct.

**Affirmed.**