**Rodney HEITMAN, Relator,**

**v.**

**CRONSTROMS MANUFACTURING, INC., Commissioner of Jobs and Training, Respondents.**

**No. C2–86–1793.**

Court of Appeals of Minnesota.

March 3, 1987.

Allen R. Webb, John Weinard, Jr., P.A., Bloomington, for relator.

William D. Hull, O'Connor & Hannan, Minneapolis, for Cronstroms Mfg.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs & Training.

Considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

HUSPENI, Judge.

Relator appeals from a determination that his falsification of an employment application constituted misconduct. We remand for a determination whether the misrepresentation was material to the position for which relator was applying.

## FACTS

Rodney Heitman was involved in an automobile accident on February 3, 1985. A few days later, when Heitman's upper back and shoulders began bothering him, he went to a doctor, who took x-rays, informed him that he had a sore back and strained ligaments, and prescribed heat and an anti-inflammatory medication. Heitman continued to experience pain in his back and saw his doctor four more times in February, March and May of 1985. He also received physical therapy treatments in February and May of 1985. On May 2, Heitman's doctor told him that he was ready to begin work.

On May 13, 1985, Heitman applied for a position with Cronstroms Manufacturing, Inc. as a welder. In response to a question in Cronstroms' employment application asking "Were you ever injured?" Heitman wrote "Yes." After the statement "Give details" Heitman wrote "Broken ankle." Heitman did not verbally inform anyone at Cronstroms about his previous back injury. He signed his application on a line located just below the statement: "I understand that misrepresentation or omission of facts called for is cause for dismissal." On a resume which he submitted with the application, Heitman indicated that his health was excellent.

Heitman was hired by Cronstroms and worked as a welder for several months without incident. His back injury did not interfere with his work performance, although in July 1985 he consulted his doctor again about continuing back problems and hired an attorney to investigate a possible lawsuit as a result of the automobile accident.

In October 1985, Heitman received a head injury at work, and in February or March 1986 he ceased working, due to headaches. He filed a claim for worker's compensation benefits, and during the investigation process Cronstroms' worker's compensation carrier discovered information about Heitman's automobile accident in February 1985. When Cronstroms learned of the accident, Heitman was discharged for falsifying his employment application.

Heitman applied for unemployment compensation, but a claims deputy denied him benefits, determining that he had been discharged for misconduct. Heitman appealed to a Department of Jobs and Training referee, who affirmed the claims deputy's decision, reasoning that Heitman had "intentionally neglected to inform the employer of his recent back injury." A Commissioner's representative, in turn, affirmed the referee, and Heitman appealed to this court.

## ISSUE

Did Heitman engage in misconduct by failing to mention his back injury on his employment application?

## ANALYSIS

Heitman first argues that when he filled out Cronstroms' application he reasonably believed that he had not sustained an "injury" to his back. The Commissioner's representative, however, affirmed the referee's finding that Heitman "knew that he had a back injury and * * * chose not to tell the employer." There is substantial evidence in the record which supports this factual determination.

Heitman claims his situation is similar to *Sticha v. McDonald's #291*, 346 N.W.2d 138 (Minn.1984), where the supreme court held that a misunderstanding between an employer and employee over the meaning of a word did not constitute misconduct. In *Sticha*, the employee had asked for time off to attend a "funeral," which she believed included the "wake." The court held that the employee had not intended to lie to her employer; rather, her conduct evinced a good-faith error in judgment. *Id.* at 140.

▮ Here, Heitman claims he thought the question regarding "injuries" referred only to "serious" or "disabling" conditions. Nevertheless, the Commissioner's representative did not believe this claim, but found:

> Since the injury to the claimant's back was so close in time to his employment application, and the applicant had seen his physician eleven days before he applied for this employment, it cannot be concluded that the claimant did anything other than intentionally withhold this information. This representative is unpersuaded by the claimant's testimony regarding why he did not write down the problem with his back.

The Commissioner's representative resolved this credibility issue against Heitman, and this court is not in the position to second-guess such determination. *Nyberg*

*v. R.N. Cardozo & Brother Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954).

Heitman also argues that even if he intentionally neglected to mention his back injury on the application, his action did not constitute "misconduct" within the meaning of the unemployment compensation laws. That term is defined as follows:

> [T]he intended meaning of the term 'misconduct' * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed 'misconduct' * * *.

*Tilseth v. Midwest Lumber Co.*, 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973), quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636, 640 (1941).

▮ While the courts in Minnesota have not ruled on the question whether a misrepresentation on an employment application constitutes misconduct, decisions from other jurisdictions applying definitions of misconduct similar to *Tilseth* provide some guidance on this issue. Several of those decisions indicate, either directly or indirectly, that it is important to consider whether or not the misrepresentation was material to the position obtained. *See, e.g., Casias v. Industrial Commission*, 38 Colo. App. 261, 554 P.2d 1357 (1976); *Roundtree v. Board of Review*, 4 Ill.App.3d 695, 281 N.E.2d 360 (1972); *Dunlap v. Michigan Employment Security Commission*, 99 Mich.App. 400, 297 N.W.2d 682 (1980); *Unemployment Compensation Board of Re-*

*view v. Dixon,* 27 Pa.Cmwlth. 8, 365 A.2d 668 (1976). Other courts focus on aspects other than materiality. *See Sturges v. Administrator, Unemployment Compensation Act,* 27 Conn.Supp. 215, 234 A.2d 372 (1966); *Woodhams v. Ore-Ida Foods, Inc.,* 101 Idaho 369, 613 P.2d 380 (1980); *Miller Brewing Co. v. Dept. of Industry, Labor & Human Relations,* 103 Wis.2d 496, 308 N.W.2d 922 (App.1981). We find more persuasive those decisions which look to the materiality of the misrepresentation.

■ In concluding that the materiality of the employee's misrepresentation must be considered, we note that "misconduct" which deprives one of eligibility for unemployment compensation benefits is different from good cause for discharge by an employer. *St. Williams Nursing Home v. Koep,* 369 N.W.2d 33, 34 (Minn.Ct.App. 1985). Thus, an employer may have good cause to discharge an employee because he falsified information on his employment application, yet may not be allowed to prevent that employee from receiving unemployment compensation benefits if the falsification is immaterial to the position obtained.

■ We find the reasoning requiring materiality of misrepresentation to comport with the spirit and purposes of the unemployment compensation laws, which are humanitarian in nature and whose disqualification provisions should be liberally construed in favor of allowing benefits. *Group Health Plan, Inc. v. Lopez,* 341 N.W.2d 294, 296 (Minn.Ct.App.1983), citing *Hendrickson v. Northfield Cleaners,* 295 N.W.2d 384 (Minn.1980).

The Commissioner's representative made no finding on whether Heitman's misrepresentation was material to the welding position which he sought. Therefore, we remand for such determination.

## DECISION

The case is remanded for a determination whether Heitman's misrepresentation on his employment application was material to the welding position.

Remanded.