INDEPENDENT SCHOOL DISTRICT NO. 709, Duluth, Minnesota, Relator,

v.

Peter C. HANSEN, Commissioner of Jobs and Training, Respondents.

No. C2–87–668.

Court of Appeals of Minnesota.

Sept. 15, 1987.

Elizabeth A. Storaasli, Duluth, for Independent School Dist. No. 709.

Raymond L. Erickson, Duluth, for Peter C. Hansen.

Hubert H. Humphrey, III, Atty. Gen., Donald E. Notvik, Sp. Asst. Atty. Gen., St. Paul, for Com'r of Jobs and Training.

Heard, considered and decided by RANDALL, P.J., and LANSING and MULALLY,* JJ.

## OPINION

EDWARD D. MULALLY, Judge.

Relator Independent School District No. 709 seeks review of a determination that respondent Peter Hansen did not engage in misconduct by falsifying an employment application and drinking on the job. We affirm.

## FACTS

Independent School District No. 709 hired Peter Hansen in February 1986 as managing chef of a nutrition program at a high school in Duluth, Minnesota. Before Hansen was hired, he filled out an employment application, answering "n/a" to a question whether he had ever had a drinking problem, and "no" to a question whether he had been hospitalized within the past five years. In fact, Hansen had been in treatment for alcoholism in February 1985, and since then had been an active member of Alcoholics Anonymous and Intergroup, an informational center for Alcoholics Anonymous. He did not respond truthfully to the questions because he was afraid he might not get the job and did not believe a

---

* Acting as judge of the Court of Appeals by ap-pointment pursuant to Minn. Const. art. 6, § 2.

treatment center was the equivalent of a hospital.

One day, approximately four months after Hansen began working for the school district, a co-worker discovered that Hansen had been drinking from a can of pop containing an alcoholic beverage. Hansen admitted the charge, and was suspended for the rest of the day. He was scheduled to meet with the school district's supervisor of classified personnel the next day, but called from a detox center to reschedule the meeting.

At the meeting a few days later, Hansen explained his problem with alcohol, and asked the supervisor to call several references to obtain information about his efforts at treatment and aftercare. Those references included a person from detox, a counselor from an alcohol treatment center, and a person from Intergroup. The supervisor was dissatisfied with the responses by those references, and Hansen was discharged.

Hansen applied for unemployment compensation benefits, but a department adjudicator denied his claim, determining that he had been discharged for misconduct. Following several appeals and two hearings, a Commissioner's representative reversed, concluding that Hansen's actions did not constitute disqualifying misconduct. The representative found that if Hansen had truthfully answered the question on the job application about drinking, he probably would have been hired anyway; thus, the misrepresentation was not "material." The representative also found that the school district did not have a published rule prohibiting the consumption of alcohol on its premises; that throughout his employment, Hansen had attended AA meetings on a weekly basis; that he had spent time each week at Intergroup so that he could socialize with other recovering alcoholics; and that he had attended several seminars on alcoholism. The Commissioner's representative determined that while Hansen's consumption of alcohol at work constituted misconduct, that conduct was the result of his own serious illness of alcoholism, which

Hansen had made consistent efforts to control.

## ISSUES

1. Did falsification of Hansen's job application constitute misconduct?

2. Did Hansen's consumption of alcohol during working hours and on the employer's premises constitute misconduct?

3. Was Hansen discharged "due to" his alcoholism?

4. Did Hansen make consistent efforts to retain his employment?

## ANALYSIS

Minn.Stat. § 268.09, subd. 1(2) (1986) provides that an individual who is discharged for misconduct is not entitled to receive unemployment compensation benefits. The employer has the burden of proving misconduct. *Sandstrom v. Douglas Machine Corporation*, 372 N.W.2d 89, 91 (Minn.Ct. App.1985). The issue is not whether there has been justification for the employee's discharge, but whether the employee is entitled to receive benefits. *St. Williams Nursing Home v. Koep*, 369 N.W.2d 33, 34 (Minn.Ct.App.1985).

This court should review the evidence in the light most favorable to the Commissioner's findings, which must be upheld if there is evidence in the record reasonably tending to sustain them. *White v. Metropolitan Medical Center*, 332 N.W.2d 25, 26 (Minn.1983). In other words, this court cannot reweigh the evidence and determine where the preponderance lies. *Nyberg v. R.N. Cardozo & Brother, Inc.*, 243 Minn. 361, 364, 67 N.W.2d 821, 823 (1954). However, the Commissioner's conclusions of law are not binding on this court. *Dean v. Allied Aviation Fueling Company*, 381 N.W.2d 80, 83 (Minn.Ct.App.1986) (citing *Smith v. Employers' Overload Company*, 314 N.W.2d 220, 221 (Minn.1981)).

## I.

■ This court has recently addressed the question whether falsification of an employment application constitutes misconduct. In *Heitman v. Cronstroms Manu-*

*facturing, Inc.*, 401 N.W.2d 425 (Minn.Ct. App.1987) we held that in order to disqualify an employee from receiving unemployment compensation benefits based upon a misrepresentation in the employee's employment application, it must be demonstrated that the falsification was "material" to the position sought:

[A]n employer may have good cause to discharge an employee because he falsified information on his employment application, yet may not be allowed to prevent that employee from receiving unemployment compensation benefits if the falsification is immaterial to the position obtained.

We find the reasoning requiring materiality of misrepresentation to comport with the spirit and purposes of the unemployment compensation laws, which are humanitarian in nature and whose disqualification provisions should be liberally construed in favor of allowing benefits * * *.

*Id.* at 428 (citations omitted). The employer has the burden of proving that the misrepresentation constituted misconduct. *See Lumpkin v. North Central Airlines, Inc.*, 296 Minn. 456, 459, 209 N.W.2d 397, 400 (1973).

Here, the Commissioner concluded that Hansen's misrepresentation regarding his alcoholism was not material to his position as a chef. The school district's own testimony supports that conclusion, since the supervisor of classified personnel testified that a truthful answer to the question would not necessarily have prevented Hansen from being hired. The employer's testimony, therefore, does not establish that alcoholism, or lack thereof, was "material" to the chef position.

Therefore, while we do not approve of Hansen's actions, we uphold the Commissioner's determination that the school district did not meet its burden of proving the misrepresentation constituted misconduct.

## II.

Hansen, by notice of review, has contested the Commissioner's conclusion that his consumption of alcohol at work constituted misconduct.

In *Tilseth v. Midwest Lumber Company*, 295 Minn. 372, 204 N.W.2d 644 (1973), the Minnesota Supreme Court determined that the repeated consumption of alcohol by a truck driver during working hours constituted misconduct, defining "misconduct" as follows:

[T]he intended meaning of the term "misconduct" * * * is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good-faith errors in judgment or discretion are not to be deemed "misconduct."

*Id.* at 374–75, 204 N.W.2d at 646.

Here, the record does not indicate that Hansen was actually intoxicated while on duty, or that he had repeatedly consumed alcohol on the employer's premises. In addition, the Commissioner found no evidence that Hansen had been informed of a policy against drinking. Nevertheless, the Commissioner found:

Considering that the employer is a school district, and that its buildings and operations are involved in public education, a reasonable person would understand that the possession of and consumption of alcohol on the employer's premises would be strictly forbidden. We conclude that [Hansen] knew that such possession of and consumption of alcohol at his place of work was banned by the employer, and that his act of having and drinking alcohol there was misconduct.

Under the facts as found by the Commissioner we agree with this analysis. However, this finding is not dispositive.

### III.

Minn.Stat. § 268.09, subd. 1(2) (1986) provides:

An individual shall not be disqualified [from receiving unemployment compensation benefits] * * * under any of the following conditions:

\*     \*     \*     \*     \*     \*

(b) The individual is separated from employment due to personal, serious illness provided that such individual has made reasonable efforts to retain employment;

An individual who is separated from employment *due to* the individual's illness of chemical dependency which has been professionally diagnosed or for which the individual has voluntarily submitted to treatment and who fails to make consistent efforts to maintain the treatment the individual knows or has been professionally advised is necessary to control that illness has not made reasonable efforts to retain employment.

(Emphasis added.)

■ The school district claims that Hansen's consumption of alcohol at work was not "due to" chemical dependency, citing *Kemp v. United States Department of Agriculture*, 385 N.W.2d 879 (Minn.Ct. App.1986). *Kemp* is distinguishable, however, since there the Commissioner did not find that the employee was discharged due to his chemical dependency, whereas here the Commissioner made such a finding.

The school district argues the Commissioner erred by finding that Hansen's consumption of alcohol at work was due to his chemical dependency, since a non-alcoholic, as well as an alcoholic, could drink on the job. The Commissioner's response to that argument is reasonably supported by the record:

It is our conclusion that the claimant's misconduct was the result of his alcoholism, since the time and place of such consumption of alcohol was obviously inappropriate and senseless; it could only have been the result of a compulsion that overrode reasonable judgment.

The school district also argues that Hansen could not have been separated "due to" his alcoholism because the employer did not know of Hansen's chemical dependency. This argument is refuted by the fact that Hansen told the personnel supervisor of his problem during his suspension, and she investigated the problem prior to his discharge.

The school district also claims that Hansen was not discharged due to chemical dependency, but was dismissed because of a pattern of dishonesty, including falsification of his employment application, denial of his problem and "covering his tracks."

The Commissioner found that Hansen was discharged due to his misrepresentation on his employment application and his on-the-job consumption of alcohol. Within this determination lies an implicit finding that the pattern of dishonesty, including denial and "covering his tracks" was not a cause of Hansen's separation.

The record supports this determination, since the school district initially claimed only two reasons for Hansen's discharge: use of alcohol on the job and falsification of the employment application. In addition, during closing argument following the second hearing, the school district focused solely upon Hansen's use of alcohol and falsification of his employment application. No mention was made of the unsatisfactory references. We therefore defer to the Commissioner's determination that the "pattern of dishonesty" was not a cause of Hansen's dismissal, but that he was discharged due to the falsification of his employment application and his serious illness of chemical dependency.

### IV.

■ Finally, the school district challenges the Commissioner's finding that Hansen made consistent efforts to maintain the treatment he knew or had been professionally advised was necessary to control his illness. *See* Minn.Stat. § 268.-09, subd. 1(2). As this court stated in

*Umlauf v. Gresen Manufacturing,* 393 N.W.2d 198 (Minn.Ct.App.1986):

> Although the statute does not require an individual totally abstain from alcohol or achieve total success in treatment, the individual must make consistent efforts to control his illness * * *. The focus is upon an individual's efforts, not his results.

*Id.* at 200 (citations omitted).

Here, the record reasonably supports the *Commissioner's determination that Hansen* made consistent efforts to control his illness. As the Commissioner found:

> After completing treatment for alcoholism, [Hansen] attended meetings of Alcoholics Anonymous daily for a time, and thereafter, on a once or twice weekly basis. He often spent time at Alcoholics Anonymous and Intergroup, so that he could socialize with other recovering alcoholics. He attended lectures or seminars on alcoholism. All of the foregoing certainly was in line with the advice he received while in treatment. This was [a] very consistent effort.

The school district argues that Hansen moved from group to group within AA to avoid completion of AA's 12–step program. There is no evidence in the record to support this argument.

The school district also claims:

> The fact that Peter Hansen showed no signs of intoxication removes any defense that he was not acting voluntarily. He was not "on a bender", he was not suffering physical symptoms of illness and he was not "hung over". He was making a decision to participate in behavior directly contrary to his employer's interest.

A similar argument was addressed by the court in *Moeller v. Minnesota Department of Transportation,* 281 N.W.2d 879 (Minn. 1979):

> The Commissioner in the instant case held that the employee had not made a reasonable effort to retain his employment because he *deliberately* began drinking again, even though he was aware of his illness and the necessary treatment. This finding by the Commis-

sioner ignores the nature of the disease of alcoholism and is predicated on the belief that once an alcoholic begins treatment he is able to control his actions. Alcoholism is a chronic illness characterized by remissions and exacerbations.

*Id.,* 281 N.W.2d at 882 (emphasis supplied).

## DECISION

The Commissioner properly allowed Hansen's claim for unemployment compensation benefits.

Affirmed.