**Krista SANTILLANA, Relator,**

v.

**CENTRAL MINNESOTA COUNCIL ON AGING, Respondent,**

**Department of Employment and Economic Development, Respondent.**

**No. A10–327.**

Court of Appeals of Minnesota.

Nov. 30, 2010.

Krista Santillana, Sauk Rapids, MN, pro se relator.

Central Minnesota Council on Aging Inc., St. Cloud, MN, respondent.

Lee B. Nelson, Britt K. Lindsay–Waterman, Minnesota Department of Employment and Economic Development, St. Paul, MN, for respondent Department of Employment and Economic Development.

Considered and decided by STAUBER, Presiding Judge; HALBROOKS, Judge; and STONEBURNER, Judge.

## OPINION

HALBROOKS, Judge.

Relator brings this pro se certiorari appeal to challenge the unemployment-law judge's (ULJ) determination that she is ineligible for unemployment benefits because she was discharged for both employment misconduct and aggravated employment misconduct. Because relator's discharge for employment misconduct is supported by substantial evidence in the record, we affirm the ULJ's determination that she is ineligible for unemployment benefits. But because relator was discharged for actions that she committed before her employment began that subsequently resulted in a felony conviction, we reverse the ULJ's conclusion that relator was discharged for aggravated employment misconduct.

## FACTS

Relator Krista Santillana was discharged from her position of grants manager with respondent Central Minnesota Council on Aging, Inc. (CMCA) in September 2009 after approximately one year of employment. The conduct that ultimately led to relator's discharge occurred while relator worked for a previous employer, Good Shepherd (a nursing home). Relator's duties at Good Shepherd included assisting residents with their financial obligations. In the course of her employment, relator wrote personal checks to herself from a resident's checkbook for amounts that totaled $6,342. The ULJ found, and relator does not dispute, that Good Shepherd discharged relator in August 2008 for theft. At that time, relator was on maternity leave. The ULJ also found that relator was aware when she was discharged that she was under investigation.

During her interview with CMCA, relator was asked why she left Good Shepherd. She responded that she left because she was interested in part-time work. CMCA never asked relator about her criminal background, relator did not tell CMCA during the interview about the ongoing criminal investigation, and the background check that CMCA performed before hiring relator came back clear.

In December 2008, after relator was hired by CMCA, she was charged with felony exploitation of a vulnerable adult. In May 2009, relator pleaded guilty to the charge, and her sentence, pursuant to a plea agreement, included a stay of imposi-

tion of sentence, a weekend in jail, performance of community service, and payment of a $100 fine. It is undisputed that she did not tell CMCA about the conviction, nor did CMCA have a policy that required such a disclosure.

In September 2009, after a CMCA employee read about relator's conviction in a newspaper, CMCA discharged relator. Relator applied for unemployment benefits and was administratively determined to be ineligible based on employment misconduct because she "gave false information in an ... interview, and the falsification was related to the reason for the required removal from the position." Relator appealed the initial determination.

Following a telephone hearing, the ULJ determined that relator had not misrepresented her criminal history and had no duty to voluntarily disclose her conviction. The ULJ stated that "[t]he [CMCA] may have made an excellent business decision to discharge [relator], but [relator's] actions do not amount to employment misconduct or aggravated employment misconduct." The ULJ therefore concluded that relator was eligible for unemployment benefits.

CMCA requested reconsideration, and the ULJ reversed the eligibility decision. The ULJ concluded that relator's "misrepresentation and failure to disclose a material fact in her interview was a serious violation of the employer's reasonable expectation. [Relator]'s conduct amounts to employment misconduct." The "material fact" that relator failed to disclose was "why she was separated from her prior employer." The ULJ also stated that relator's "conduct amounted to a felony, and had a significant adverse effect on the employment because of the subject matter of CMCA's work with senior citizens, and the impact on CMCA's reputation and credibility." The ULJ further concluded

that relator is ineligible for unemployment benefits because she was discharged for aggravated employment misconduct. This certiorari appeal follows.

## ISSUES

I. Did the ULJ err by concluding that relator is ineligible for unemployment benefits because she was discharged for employment misconduct?

II. Did the ULJ err by concluding that relator is ineligible for unemployment benefits because she was discharged for aggravated employment misconduct?

## ANALYSIS

This court may reverse or modify the ULJ's decision if the substantial rights of a petitioner may have been prejudiced because, among other things, the decision is affected by an error of law or is unsupported by substantial evidence in view of the entire record as submitted. Minn.Stat. § 268.105, subd. 7(d) (2008).

## I. Employment misconduct

Employment misconduct is statutorily defined as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn.Stat. § 268.095, subd. 6(a). An employee who is discharged for employment misconduct is ineligible from receiving unemployment benefits. *Id.,* subd. 4(1) (2008). Whether an employee committed employment misconduct presents a mixed question of fact and law. *Jenkins v. Am. Express Fin. Corp.,* 721 N.W.2d 286, 289 (Minn.2006). Whether the employee committed a particular act is a question of

fact. *Scheunemann v. Radisson S. Hotel,* 562 N.W.2d 32, 34 (Minn.App.1997). Whether the act committed by the employee constitutes employment misconduct presents a question of law, which we review de novo. *Id.*

In *Heitman v. Cronstroms Mfg., Inc.,* we concluded that the failure to disclose during the application process a fact that is material to the position could constitute misconduct. 401 N.W.2d 425, 428 (Minn. App.1987). The definition of misconduct at the time *Heitman* was decided was

> conduct evincing such willful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.

*Id.* at 427 (quoting *Tilseth v. Midwest Lumber Co.,* 295 Minn. 372, 374–75, 204 N.W.2d 644, 646 (1973)). Because Minnesota courts at the time that *Heitman* was decided had not considered "whether a misrepresentation on an employment application constitutes misconduct," this court looked to other jurisdictions for guidance. *Id.* In *Heitman,* this court found "more persuasive those decisions which look to the materiality of the misrepresentation." *Id.* at 428. We found "the reasoning requiring materiality of misrepresentation to comport with the spirit and purposes of the unemployment compensation laws, which are humanitarian in nature and whose disqualification provisions should be liberally construed in favor of allowing benefits." *Id.*

*Heitman* was decided under the *Tilseth* common-law definition of misconduct and before the codification of the statutory definition of misconduct that applies here. "But cases decided under *Tilseth* remain instructive as to the areas in which the *Tilseth* and [current] statutory definitions overlap." *Lawrence v. Ratzlaff Motor Express Inc.,* 785 N.W.2d 819, 823 (Minn.App.2010), *review denied* (Minn. Sept. 29, 2010). Here, we conclude that a material misrepresentation during the hiring process continues to fit within the statutory definition of employment misconduct. Intentionally misrepresenting a fact that is material to employment shows a substantial lack of concern for the employment. *See* Minn.Stat. § 268.095, subd. 6(a). A person making a material misrepresentation during the hiring process is therefore ineligible for unemployment benefits if he or she is later discharged because of the misrepresentation.

Here, relator does not dispute that a material misrepresentation during the hiring process constitutes employment misconduct, but instead argues both that she did not misrepresent the reason that she separated from Good Shepherd and that, even if she did, the misrepresentation was not material. We will address each argument in turn.

The ULJ's finding that relator misrepresented the reason that she separated from Good Shepherd is supported by substantial evidence in the record. During the hearing, CMCA's witness testified that during the employment interview, she

> ask[ed] why [relator] was leaving her current place of employment ... and what I recall from that conversation was that it was because she was ... on maternity leave at the time of the interview and that she was looking to only work part-time hours and not full-time

and the nature of her previous employer required full-time employment.

Relator does not dispute this recollection, but she contends that she did not disclose the ongoing criminal investigation because she "was not formally charged with any crime and had not received any notification of any proceedings to be aware of, so it was not disclosed due to no factual data to discuss." Relator argues that she really was looking for part-time hours "in a related field where there would be no conflict with possible criminal charges."

But neither the fact that she was not formally charged with a crime nor that she may have been looking for part-time work addresses the true reason for her separation from Good Shepherd, which is the essence of the inquiry. To state that she was merely looking for different hours is a misrepresentation; it implies that she voluntarily left her previous employment. In fact, the ULJ found that relator was discharged for theft. Relator does not challenge this finding on appeal. We therefore conclude that there is substantial evidence in the record to support the ULJ's conclusion that relator misrepresented the reason for her separation from Good Shepherd.

 The related question is whether this misrepresentation was material to relator's position at CMCA. In *Indep. Sch. Dist. No. 709 v. Hansen*, we concluded that a misrepresentation about an employee's alcoholism was not material to his employment in part because the employer testified that "a truthful answer to the question would not necessarily have prevented Hansen from being hired." 412 N.W.2d 320, 323 (Minn.App.1987). Here, relator's work as a grants manager provided her with access to a database of confidential client information including names, addresses, and social-security numbers. After learning of her conviction, a CMCA witness testified that she discharged relator, in part, because CMCA was concerned that relator might misuse this confidential information to develop a relationship with seniors in order to exploit them or use her position to entice inappropriate disbursements from nonprofits with which she worked. Given relator's job duties and CMCA's legitimate concerns about continuing to employ her after discovering her conviction, it is unlikely that CMCA would have hired relator had she disclosed the real reason for her separation from Good Shepherd. This indicates materiality. *Cf. id.*

The ULJ found that "because CMCA's work is with senior citizens, [relator] had a duty to disclose the fact [that] she was being investigated for felony theft of a vulnerable adult." We agree. We do not find persuasive relator's argument that her ongoing criminal investigation was immaterial to the position merely because she had no direct access to funds in her position with CMCA. Access to confidential information is as much a source of concern as direct access to funds. We therefore conclude that there is substantial evidence in the record to support the ULJ's conclusion that relator's misrepresentation was material to her position. Accordingly, the ULJ did not err in her determination that relator was discharged for employment misconduct and is ineligible for unemployment benefits.

## II. Aggravated employment misconduct

 Aggravated employment misconduct is defined as "the commission of any act, on the job or off the job, that would amount to a gross misdemeanor or felony if the act ... had a significant adverse effect on the employment." Minn.Stat. § 268.095, subd. 6a(a)(1) (2008). In addition to making an individual ineligible for

unemployment benefits, a discharge for aggravated employment misconduct results in cancellation of wage credits from that employment for purposes of an individual's benefits account. *Id.,* subd. 10(c) (Supp.2009).

Respondent Minnesota Department of Employment and Economic Development relies on *Pechacek v. Minn. State Lottery,* 497 N.W.2d 243 (Minn.1993), in support of its position that a crime committed prior to employment can form the basis for a discharge due to aggravated employment misconduct. We disagree with the department's reading of the case.

 The supreme court stated in *Pechacek* that "Pechacek began working for the Lottery on February 26, 1990. In mid-February 1991, Pechacek was charged with three counts of second degree criminal sexual conduct with his 11–year–old daughter, and on May 8, 1991 he pleaded guilty to one count of violating Minn.Stat. § 609.343, subd. 1(a) (1990)." 497 N.W.2d at 245. Pechacek was "convicted of a felony committed after he became an employee of the Lottery." *Id.* Here, in contrast, relator was convicted based on conduct that occurred before CMCA hired her. Regardless of whether relator's conviction had a significant adverse effect on her employment, we conclude that an employee cannot be discharged for aggravated employment misconduct based on an act or conduct that would amount to a gross misdemeanor or a felony if the act or conduct occurred before the employment at issue.

**DECISION**

Because the ULJ's finding that relator misrepresented a matter that was material to her employment with CMCA is supported by substantial evidence in the record, the ULJ did not err by concluding that relator was discharged for employment misconduct. But because the conduct that resulted in relator's felony conviction did not occur during the term of her employment at CMCA, the ULJ erred as a matter of law by concluding that relator was discharged for aggravated employment misconduct within the meaning of the unemployment benefits law.

**Affirmed in part and reversed in part.**