*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0435**

Nina Wilson,
Relator,

vs.

Mortgage Resource Center, Inc.,
Respondent,

Department of Employment and Economic Development,
Respondent.

**Filed December 21, 2015
Reversed
Cleary, Chief Judge
Dissenting, Johnson, Judge**

Department of Employment and Economic Development
File No. 32872120-4

Thomas H. Boyd, Kyle R. Kroll (certified student attorney), Winthrop & Weinstine, P.A., Minneapolis, Minnesota (for relator)

Richard W. Pins, Amy B. Conway, Stinson Leonard Street LLP, Minneapolis, Minnesota (for respondent Mortgage Resource Center, Inc.)

Lee B. Nelson, Tim Schepers, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Cleary, Chief Judge; Connolly, Judge; and Johnson, Judge.

UNPUBLISHED OPINION

**CLEARY**, Chief Judge

In this unemployment-compensation appeal, relator Nina Wilson challenges a determination by an unemployment-law judge (ULJ) that Wilson is ineligible for unemployment benefits because she provided false information regarding her level of education on her employment application. Because the misrepresentation was not material to the employment and therefore does not constitute employment misconduct, we reverse.

## FACTS

On June 6, 2014, Wilson submitted an employment application to Mortgage Resource Center (MRC), stating that she had completed a general education development test (GED). MRC offered Wilson the job on June 9 and on June 10 requested her background check report from a company providing that service. On June 17, the company returned a report stating it could not verify that Wilson had received a GED. Wilson began employment on June 21.

The ULJ found that sometime in August 2014, MRC president Jeffrey Hoerster learned that the background check performed when Wilson was hired could not confirm she had a GED. On September 10, MRC sent a letter to Wilson stating that they were unable to verify her GED and asking her to provide documentation by September 17. Wilson never responded to this request and she was formally dismissed in a letter sent by MRC on September 19.

After an evidentiary hearing, the ULJ found that the misrepresentation regarding the GED constituted employee misconduct. The ULJ held that "Wilson intentionally falsified her application" and the "conduct was a serious violation of the employer's reasonable expectations." The ULJ concluded, "Wilson was discharged because of employment misconduct and is ineligible for unemployment benefits." After a request for reconsideration, the ULJ affirmed this decision. This appeal followed.

## DECISION

An employee discharged because of employment misconduct is disqualified from receiving unemployment benefits. Minn. Stat. § 268.095, subd. 4(1) (2014). Employment misconduct is "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(a) (2014). "[W]hether the act committed by the employee constitutes employment misconduct is a question of law, which we review de novo." *Skarhus v. Davanni's Inc.*, 721 N.W.2d at 340, 344 (Minn. App. 2006).

Misconduct committed during the hiring process is analyzed differently than misconduct committed during employment. *Icenhower v. Total Auto., Inc.*, 845 N.W.2d 849, 856 (Minn. App. 2014), *review denied* (July 15, 2014). When an employee makes a misrepresentation on an employment application, this constitutes employment misconduct only where the misrepresentation is material to the position sought. *Indep.*

3

*Sch. Dist. No. 709 v. Hansen*, 412 N.W.2d 320, 323 (Minn. App. 1987). "The employer has the burden of proving that the misrepresentation constituted misconduct." *Id.*

A misrepresentation during the hiring process is material if an employer would not have hired the relator had the application been truthful. *Id.* This court has held that,

> an employer may have good cause to discharge an employee because he falsified information on his employment application, yet may not be allowed to prevent that employee from receiving unemployment compensation benefits if the falsification is immaterial to the position obtained.
>
> We find the reasoning requiring materiality of misrepresentation to comport with the spirit and purposes of the unemployment compensation laws, which are humanitarian in nature and whose disqualification provisions should be liberally construed in favor of allowing benefits.

*Heitman v. Cronstroms Mfg., Inc.*, 401 N.W.2d 425, 428 (Minn. App. 1987). Thus, the fact that the applicant made a misrepresentation is not sufficient to make it material. Employers are reasonably entitled to expect honesty from their employees. However, a denial of benefits requires that the underlying substance of the misrepresentation was material. The mere existence of an application misrepresentation, even where the employer values honesty, is not sufficient to make it material.

On appeal, the department of employment and economic development argues for a bright-line rule, that "any misrepresentation of educational achievement is material to the employment because an applicant's level of education is a fundamental consideration for employers as they weigh the credentials of each applicant." We decline to adopt such a rule. Whether a misrepresentation of an applicant's education is material to the hiring

4

decision depends on the facts of each case. The *Heitman* court distinguished misrepresentations sufficient to provide "good cause to discharge" with those that are material to the position and therefore sufficient to make a relator ineligible for benefits. Although a misrepresentation of education may justify discharge of an employee, it is not employee misconduct per se.

It is not at all clear that, had MRC been aware Wilson did not have a GED, she would not have been hired. The job description did not mention a requirement of a high school degree or GED. It stated the position required a "2 or 4 year undergraduate degree *or equivalent experience*" (emphasis added). Wilson was hired despite the fact that MRC was aware that she did not have, nor claim to have, a two- or four-year undergraduate degree. She did have, however, over two decades of experience in the financial field. At no point during the ULJ hearing did a representative of MRC state that Wilson would not have been hired had she truthfully reported she did not have a GED. Nor did a representative of MRC ever state specifically why a GED would be necessary for the position, or what role this qualification might play in fulfilling the obligations of the position.

Based on the record, it appears that MRC discharged Wilson because she falsified her application. The party opposing the provision of benefits has the burden of demonstrating that the misrepresentation was material, and the respondents have not carried this burden. Because the record is insufficient to establish that Wilson committed material employee misconduct, the ULJ erred in ruling that Wilson was ineligible for

5

unemployment benefits. The misrepresentation for which Wilson was discharged on September 19, 2014 did not make her ineligible for unemployment benefits.

**Reversed.**

**JOHNSON**, Judge (dissenting)

I respectfully dissent from the opinion of the court. The ULJ's decision is supported by the evidence in the agency record and is consistent with this court's caselaw concerning employees who are terminated for dishonesty.

The ULJ found that Wilson engaged in misconduct because her misrepresentation on her job application, which "compromised MRC's trust" in her, was a serious violation of the standards of behavior that an employer has a right to reasonably expect of an employee. *See* Minn. Stat. § 268.095, subd. 6(a)(1) (2014). The ULJ's decision is consistent with this court's caselaw. Wilson's conduct is similar to the misconduct of the employee in *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340 (Minn. App. 2006), who was terminated because she stole four dollars' worth of food products from her employer. *See id.* at 342-44. Wilson's conduct also is similar to the misconduct of the employee in *Frank v. Heartland Auto. Servs., Inc.*, 743 N.W.2d 626 (Minn. App. 2008), who was terminated because he prepared a false invoice that charged a customer for services that were not performed. *See id.* at 629. In *Skarhus*, we noted that the employer "could no longer entrust" the employee with her assigned responsibilities, regardless of "the minimal value of the stolen food." 721 N.W.2d at 344. In *Frank*, we similarly noted that, "[r]egardless of the amount or frequency of the employee's fiduciary failing, this sort of integrity-measuring conduct will always constitute an act that has a significant adverse impact on the employer." 743 N.W.2d at 631. *Skarhus* and *Frank* provide a solid legal basis for the ULJ's decision.

The opinion of the court does not apply *Skarhus* or *Frank*. Instead, the opinion of the court applies caselaw that asks whether a misrepresentation on a job application is a material misrepresentation. *See Independent Sch. Dist. No. 709 v. Hansen*, 412 N.W.2d 320 (Minn. App. 1987); *Heitman v. Cronstroms Mfg., Inc.*, 401 N.W.2d 425 (Minn. App. 1987); *see also Santillana v. Central Minnesota Council on Aging*, 791 N.W.2d 303 (Minn. App. 2010). In none of those cases, however, did the employer express concern about the employee's honesty or integrity. *See Santillana*, 791 N.W.2d at 305-08; *Hansen*, 412 N.W.2d at 321-23; *Heitman*, 401 N.W.2d at 426-28. Rather, in each case, the sole question was whether the fact that was misrepresented was important to the employee's qualifications for the job from which the employee was terminated. *See Santillana*, 791 N.W.2d at 308 (affirming finding that non-profit grant manager's suspected criminal conduct in prior job was material); *Hansen*, 412 N.W.2d at 322-23 (affirming finding that school chef's drinking problem was not material); *Heitman*, 401 N.W.2d at 427-28 (reversing and remanding for finding whether welder's prior back injury was material). MRC, however, terminated Wilson because the company believed that her untruthfulness on her job application revealed a lack of integrity and character. Thus, *Skarhus* and *Frank* apply, and *Heitman* and *Hansen* do not apply.

If *Heitman* and *Hansen* were to apply, they would need to be applied in harmony with *Skarhus* and *Frank*. Given the facts of this case, it would be necessary to recognize that an employee's demonstrated lack of honesty, integrity, and/or character could be material, even if the underlying fact that was misrepresented was immaterial. In this case, there is abundant evidence that integrity and character were material to Wilson's

employment. MRC's job-application form has a clear warning on the first page that "[f]alse or misleading statements . . . on this form are grounds for . . . terminating employment." MRC's offer letter expressly stated that the job offer was "contingent upon the successful result of [a] background search." MRC's background-check vendor tried to confirm that Wilson had received a GED but was unable to do so. MRC followed up by asking Wilson to provide proof of her GED. Wilson did not provide proof of her GED, which led to her termination. MRC's president testified that MRC terminated Wilson because her misrepresentation on her job application revealed "an integrity and character issue." MRC's president also testified that MRC has terminated other employees who made misrepresentations on their job applications. This evidence leads to the conclusion that MRC genuinely and reasonably believed that Wilson's untruthfulness on her job application demonstrated a lack of integrity and character and that the company considered that shortcoming to be material to her employment.

The opinion of the court implies that *Heitman* and *Hansen* apply to the exclusion of *Skarhus* and *Frank*. If I were to accept that premise, I would conclude that the most appropriate remedy is a remand to the agency. A remand would allow the ULJ to consider whether the record should be reopened, make relevant findings of fact, and make a determination that considers the issue of materiality. The pertinent question would be whether MRC would have hired Wilson if she had truthfully represented that she does not have either a high-school diploma or a GED. The ULJ has not yet considered that question because Wilson (who was unrepresented in agency proceedings) did not raise the issue, because the ULJ did not identify the issue on his own initiative,

D-3

and because MRC relied on the theory that Wilson's demonstrated lack of integrity and character is sufficient evidence of misconduct. The ULJ also may wish to consider the widely held, common-sense view that a high-school education is essential to many jobs in the modern economy, especially a job that involves frequent communications with corporate clients in a service-oriented business. In light of the circumstances, it is inappropriate to decide the issue of materiality in the first instance on appeal, without evidence relevant to that issue. *See Heitman*, 401 N.W.2d at 428 (remanding to agency for determination whether the fact that employee had failed to disclose on job application was material).

For these reasons, I would affirm the decision of the ULJ.