*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0959**

Vincent Rosetta,
Respondent,

vs.

Quality Bicycle Products, Inc.,
Relator,

Department of Employment and Economic Development,
Respondent.

**Filed February 13, 2017
Affirmed
Kirk, Judge**

Department of Employment and Economic Development
File No. 34374825-2

Vincent Rosetta, Minneapolis, Minnesota (pro se respondent)

Matthew S. Moore, General Counsel, Quality Bicycle Products, Inc., Bloomington, Minnesota (for relator)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Kirk, Presiding Judge; Halbrooks, Judge; and Rodenberg, Judge.

UNPUBLISHED OPINION

**KIRK**, Judge

Relator Quality Bicycle Products, Inc. (QBP), challenges an unemployment-law judge's (ULJ) determination that respondent Vincent Rosetta is eligible for unemployment benefits. Because there is substantial evidence in the record that Rosetta's employment was terminated for a reason other than employment misconduct or aggravated employment misconduct, Rosetta is eligible for unemployment benefits. Furthermore, the ULJ did not abuse its discretion in denying QBP an additional evidentiary hearing. We affirm.

## FACTS

After quitting his job at HED Cycling Products (HED), Rosetta started working for QBP on June 1, 2015. On November 17, Rosetta and QBP learned that Rosetta was the subject of a criminal investigation for allegedly stealing from HED. In response to the investigation, and to Rosetta allegedly admitting to investigators that he had stolen from HED, QBP placed Rosetta on an indefinite unpaid suspension. Under Minn. Stat. § 268.095, subd. 5(a) (2016), Rosetta's unpaid suspension became a discharge from employment on December 16.

A clerk from the Minnesota Department of Employment and Economic Development (DEED) determined that Rosetta was eligible for unemployment benefits on December 28. In its eligibility determination, respondent DEED noted that QBP had suspended Rosetta because of QBP's suspicion of theft, but that the information before DEED did not show that Rosetta had committed employment misconduct by being involved in a theft. QBP appealed DEED's eligibility determination.

2

At the subsequent evidentiary hearing, QBP asserted that Rosetta is not eligible for unemployment benefits because he was terminated for employment misconduct or aggravated employment misconduct. QBP's human resources (HR) director testified that Rosetta was suspended because he admitted to stealing from HED. She also testified that there were no allegations that Rosetta stole from QBP and that Rosetta had not been charged with theft prior to beginning employment with QBP. She noted that Rosetta was not dishonest in his QBP employment application. She explained that QBP suspended Rosetta because it believed that he posed a risk of theft, because the theft allegation made him uninsurable as an employee, and because the allegation and investigation negatively affected QBP's reputation.

QBP also pointed to its employee handbook that states that employees may be terminated from employment for theft or dishonesty, or for "[a]rrest and conviction for criminal offenses" that affect the employee's "ability to adequately perform their work assignment." The handbook notes that stealing "may result in immediate termination." At the time of his suspension and discharge, Rosetta had not been arrested for, or convicted of, theft. Rosetta was not charged with theft until January 2016.

At the hearing, Rosetta testified that he did not violate any of QBP's policies while he was employed there and that he was forthcoming about the theft investigation. He also testified that he was honest with QBP about his record during the hiring process.

The ULJ found that the evidence presented did not support the conclusion that QBP terminated Rosetta for employment misconduct or aggravated employment misconduct and that Rosetta is therefore eligible for unemployment benefits.

3

QBP requested reconsideration of the ULJ's decision and an additional evidentiary hearing, arguing that: (1) since the first hearing, Rosetta had pleaded guilty to two felony theft charges; (2) when Rosetta quit his job at HED, he lied to HED about who his new employer was; and (3) during his job interview with QBP, Rosetta falsely claimed that he wanted to leave HED for an opportunity for growth and because he was concerned about the direction HED was taking. In its order of affirmation, the ULJ affirmed Rosetta's eligibility for unemployment benefits and denied QBP's request for an additional evidentiary hearing. The ULJ concluded that its previous determination was factually correct. This certiorari appeal follows.

**D E C I S I O N**

**I.      The ULJ did not err in determining that Rosetta is eligible for unemployment benefits.**

This court "may affirm the decision of the [ULJ] or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioner may have been prejudiced because the findings, inferences, conclusion, or decision are," among other things, either affected by an error of law, or "unsupported by substantial evidence in view of the entire record as submitted." Minn. Stat. § 268.105, subd. 7(d) (2016). "If the relevant facts are not in dispute, we apply a de novo standard of review to the ULJ's interpretation of the unemployment statutes and to the ultimate question of whether an applicant is eligible to receive unemployment benefits." *Menyweather v. Fedtech, Inc.*, 872 N.W.2d 543, 545 (Minn. App. 2015).

4

"The Minnesota Unemployment Insurance Law is 'remedial in nature and must be applied in favor of awarding unemployment benefits.'" *White v. Univ. of Minn. Physicians Corp.*, 875 N.W.2d 351, 354 (Minn. App. 2016) (quoting Minn. Stat. § 268.031, subd. 2 (2014)). The disqualification provisions are narrowly construed in light of their remedial nature and "the policy that unemployment compensation is paid only to those persons unemployed through no fault of their own." *Stagg v. Vintage Place, Inc.*, 796 N.W.2d 312, 315 (Minn. 2011) (quotation omitted). "There is no equitable or common law denial or allowance of unemployment benefits." Minn. Stat. § 268.069, subd. 3 (2016).

Here, the only fact disputed by the parties is whether Rosetta actually stole from HED, which is not relevant to the issues before this court. Therefore, there is no factual dispute to resolve, and we apply a de novo standard of review to the ULJ's determination. *See Menyweather*, 872 N.W.2d at 545; *see also Stagg*, 796 N.W.2d at 315 ("Determining whether a particular act constitutes disqualifying misconduct is a question of law that we review de novo.").

### A. Rosetta was discharged from QBP for a reason other than employment misconduct.

Employment misconduct is defined under Minn. Stat. § 268.095, subd. 6(a) (2016), as "any intentional, negligent, or indifferent conduct, on the job or off the job that displays clearly: (1) a serious violation of the standards of behavior the employer has the right to reasonably expect of the employee; or (2) a substantial lack of concern for the employment." Minn. Stat. § 268.095, subd. 6(e) (2016), notes that this definition of employment misconduct "is exclusive and no other definition applies." "A single incident

5

of theft by an employee is employment misconduct," but the theft must have been committed during the employment. *Pierce v. DiMa Corp. (1992)*, 721 N.W.2d 627, 630 (Minn. App. 2006); *see Santillana v. Cent. Minn. Council on Aging*, 791 N.W.2d 303, 309 (Minn. App. 2010).

QBP argues that the *Santillana* decision compels the conclusion that Rosetta committed employment misconduct during the hiring process with QBP. QBP notes that a prospective employee commits employment misconduct when the employee makes a material misrepresentation to a prospective employer during the hiring process because it shows a "substantial lack of concern for the employment." 791 N.W.2d at 307; *see* Minn. Stat. § 268.095, subd. 6(a)(2).[1] In *Santillana*, the prospective employee failed to disclose to her prospective employer that she was terminated by her past employer for theft, and that she was being investigated for related criminal charges. *Id.* at 305. QBP draws the strained conclusion that the employee's actions in *Santillana* are comparable to Rosetta's actions, and that he is therefore not entitled to unemployment benefits.

DEED argues that, as supported by the record, QBP did not suspend or discharge Rosetta for anything he did while employed by or being interviewed by QBP, but rather because he was the subject of a criminal investigation. DEED further argues that, because

---

[1] The Minnesota Supreme Court recently held in *Wilson v. Mortg. Res. Ctr.*, __ N.W.2d __, 2016 WL 7448309 (Minn. Dec. 18, 2016), that the subjective materiality standard previously applied by this court when evaluating claims of employment misconduct is not compatible with the statutory language of Minn. Stat. § 268.095, subd. 6. 2016 WL 7448309 at *6. Because the ULJ did not err when it concluded that Rosetta was discharged for a reason other than employment misconduct or aggravated employment misconduct, and did not conduct a materiality analysis, the *Wilson* opinion does not impact our decision.

6

Rosetta was suspended and discharged for alleged theft from HED, the only question the panel needs to address is whether Rosetta's alleged theft from HED constitutes employment misconduct or aggravated employment misconduct during his employment with QBP. DEED concludes, relying on *Santillana*, that Rosetta was not discharged for employment misconduct and that he is eligible for unemployment benefits.

HED did not terminate Rosetta's employment, and Rosetta was not aware of the criminal investigation before November 17, 2015. There is no evidence in the record to conclude that Rosetta misrepresented his reasons for leaving HED, which was acknowledged by QBP's HR director at the evidentiary hearing when she testified that Rosetta had not been dishonest during the hiring process. There is also no evidence in the record that QBP ever asked Rosetta whether he had stolen from a past employer. QBP's reliance on *Santillana* is misplaced because Rosetta did not make a misrepresentation during the hiring process with QBP. Further, there is no evidence in the record to conclude that Rosetta violated QBP's employment policies or that he was accused of committing any act while employed by QBP that would violate Minn. Stat. § 268.095, subd. 6(a).

Essentially, QBP asks this court to craft a rule that would require a prospective employee to affirmatively disclose all past employment misconduct during the hiring process. But we decline to take this step because "the task of extending existing law falls to the supreme court or the legislature, but does not fall to this court." *Tereault v. Palmer*, 413 N.W.2d 283, 286 (Minn. App. 1987), *review denied* (Minn. Dec. 18, 1987). We conclude that the ULJ did not err when she determined that Rosetta was discharged for a

7

reason other than employment misconduct and that Rosetta is eligible for unemployment benefits.

**B.     Rosetta was discharged from QBP for a reason other than aggravated employment misconduct.**

Aggravated employment misconduct is defined, in relevant part, under Minn. Stat. § 268.095, subd. 6a(a)(1) (2016), as "the commission of any act, on the job or off the job, that would amount to a gross misdemeanor or felony if the act substantially interfered with the employment or had a significant adverse effect on the employment."

QBP argues that the theft allegation against Rosetta constituted aggravated employment misconduct at QBP and that *Santillana* was wrongly decided. *Santillana* held that "[r]egardless of whether [a] conviction had a significant adverse effect on . . . employment, . . . an employee cannot be discharged for aggravated employment misconduct based on an act or conduct that would amount to a . . . felony if the act or conduct occurred before the employment at issue." 791 N.W.2d at 309.[2]  The *Santillana* decision compels us to conclude that Rosetta did not commit aggravated employment misconduct, but QBP argues that because Minn. Stat. § 268.095, subd. 6a(a)(1), does not include a temporal limitation on when the employee's criminal conduct occurred, no limitation was intended, and this court should not treat *Santillana* as precedential.  QBP asserts that the holding in *Santillana* puts employers in a situation where they must either retain an employee and run the risk of further criminal acts, or discharge the employee and

---

[2] The subjective materiality standard rejected in *Wilson* was not applied to the aggravated employment misconduct analysis under Minn. Stat. § 268.095, subd. 6a, in *Santillana*, and does not impact our decision here.  *Santillana*, 791 N.W.2d at 308-09.

8

suffer the financial impact of paying unemployment benefits. But unemployment benefits are paid from state funds, not by an employer. Minn. Stat. § 268.069, subd. 2 (2014); *see also Haugen v Superior Dev., Inc.*, 819 N.W.2d 715, 722 (Minn. App. 2012) (holding that unemployment benefits are paid from state funds).

QBP asks this court to disregard the holding in *Santillana* and reverse the ULJ's determination that Rosetta did not commit aggravated employment misconduct. But "[t]he function of the court of appeals is limited to identifying errors and then correcting them." *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988) (citations omitted). And this court is obligated to follow the supreme court's construction of statutes. *Jendro v. Honeywell, Inc.*, 392 N.W.2d 688, 691 n.1 (Minn. App. 1986), *review denied* (Minn. Nov. 19, 1986).

Here, the alleged theft occurred before Rosetta began employment with QBP, and there is no evidence that he committed theft after beginning that employment. The court must follow the holding in *Santillana*, and therefore concludes that the ULJ did not err when it determined that Rosetta was discharged for a reason other than aggravated employment misconduct and that he is eligible for unemployment benefits.

## II. The ULJ did not abuse its discretion in denying QBP's request for an additional evidentiary hearing.

This court will not reverse a ULJ's decision to deny an additional evidentiary hearing absent an abuse of discretion. *Kelly v. Ambassador Press, Inc.*, 792 N.W.2d 103, 104 (Minn. App. 2010); *Ywswf v. Teleplan Wireless Servs. Inc.*, 726 N.W.2d 525, 533 (Minn. App. 2007) (holding appellate courts will defer to the ULJ's decision not to hold an additional hearing). Under Minn. Stat. § 268.105, subd. 2(c) (2016), a ULJ must order an

9

additional evidentiary hearing if a party shows that evidence that was not submitted at the hearing: "(1) would likely change the outcome of the decision and there was good cause for not having previously submitted that evidence; or (2) would show that the evidence that was submitted at the hearing was likely false and . . . had an effect on the outcome of the decision."

QBP argues that there is no affirmative evidence in the record to support the ULJ's determination that Rosetta was truthful in his employment application. QBP claims that Rosetta's statements are self-serving and that the testimony of its HR director is not conclusive because she did not personally interview Rosetta, and she could not have evaluated his truthfulness. QBP also argues that, because it conducted an additional investigation after the first evidentiary hearing and gathered new evidence, the ULJ should have ordered an additional evidentiary hearing to expand the record. QBP asks that this court order an additional evidentiary hearing to allow further questioning of Rosetta.

DEED argues that QBP had a fair and full opportunity to develop the record at the first evidentiary hearing. DEED notes that QBP was represented by two attorneys at the hearing and it was not in any way limited in presenting its witnesses or evidence, nor in its cross-examination of Rosetta. DEED asserts that QBP failed to argue good cause for not previously submitting the new evidence under Minn. Stat. § 268.105, subd. 2(c)(1), and therefore there was no need for the ULJ to address whether QBP's new evidence would have affected the outcome of the proceeding. *See id.*

Here, there is no evidence in the record to support the conclusion that the ULJ abused its discretion in denying QBP an additional evidentiary hearing. QBP's argument

that testimony presented at the first hearing was not credible is unsupported, and unsupported allegations are not sufficient to show that the evidence submitted at the first hearing "was likely false" as required under Minn. Stat. § 268.105, subd. 2(c)(2). Additionally, we defer to the ULJ's credibility determinations, and the ULJ relied on Rosetta and the HR director's statements. *McNeilly v. Dept. of Emp't & Econ. Dev.*, 778 N.W.2d 707, 710 (Minn. App. 2010); *Skarhus v. Davanni's Inc.*, 721 N.W.2d 340, 345 (Minn. App. 2006).

Further, Rosetta's subsequent guilty plea in the HED theft case does not retroactively change the nature of his situation when he was terminated by QBP. And aside from his guilty plea, QBP's offer of proof contained only unsupported allegations that Rosetta did not disclose his new employer to HED when he quit, and that Rosetta misled QBP as to why he was seeking new employment. This is not sufficient evidence to establish that Rosetta was dishonest with QBP about why he was seeking new employment, and Rosetta's alleged failure to disclose his new employer to HED does not constitute employment misconduct or aggravated employment misconduct at QBP. Here, QBP did not establish good cause for failing to present its evidence at the first hearing and did not establish that the evidence would have likely changed the outcome of the hearing.

After a thorough review of the record, we conclude that the ULJ did not abuse its discretion in denying QBP's request for an additional evidentiary hearing.

**Affirmed.**

11