Sara IRVINE, Relator,

v.

ST. JOHN'S LUTHERAN CHURCH
OF MOUND, Respondent,

Department of Employment and
Economic Development,
Respondent.

No. A09–1155.

Court of Appeals of Minnesota.

March 9, 2010.

Sara K. Irvine, Mound, MN, pro se relator.

St. John's Lutheran Church of Mound, Mound, MN, respondent employer.

Lee B. Nelson, Amy R. Lawler, Department of Employment and Economic Development, St. Paul, MN, for Department of Employment and Economic Development.

Considered and decided by TOUSSAINT, Chief Judge; KALITOWSKI, Judge; and COLLINS, Judge.

## OPINION

COLLINS, Judge.*

Relator Sara Irvine challenges the decision of the unemployment law judge (ULJ) that she could not establish an unemployment-benefit account because her employment with respondent St. John's Lutheran Church of Mound (St. John's Church) was noncovered employment. Irvine argues that the operative statute does not require covered employment as a condition of eligibility and contends that she should receive benefits because she was unemployed through no fault of her own. Because Irvine's employment with St. John's Church was noncovered employment and because the church did not elect to have the employment deemed covered employment, and because equitable allowance of unemployment benefits is not authorized, we affirm.

## FACTS

St. John's Church employed Irvine as its business administrator from September 5, 2006 through February 27, 2009. St. John's Church's employment handbook indicated that the church paid unemployment taxes and implied that its employees

would receive unemployment benefits if they lost their jobs through no fault of their own.

Irvine's employment ended through no fault of her own and she applied for unemployment benefits and attempted to establish a benefit account, but was notified by the Minnesota Department of Employment and Economic Development (DEED) that employment with a church could not be used to establish a benefit account. She appealed, and, after a hearing, the ULJ reached the same conclusion. The ULJ affirmed on reconsideration and Irvine brought this certiorari appeal.

## ISSUES

1. Was Irvine's employment with a tax-exempt church "noncovered employment," so that she did not earn any wage credits from that employment which could be used to establish an unemployment-benefit account?

2. Should Irvine be allowed unemployment benefits for equitable reasons?

## ANALYSIS

When reviewing the decision of the ULJ, we may affirm the decision, remand the case for further proceedings, or reverse or modify the decision

if the substantial rights of the [relator] may have been prejudiced because the findings, inferences, conclusion, or decision are

(1) in violation of constitutional provisions;

(2) in excess of the statutory authority or jurisdiction of the department;

(3) made upon unlawful procedure;

(4) affected by other error of law;

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

(5) unsupported by substantial evidence in view of the entire record as submitted; or

(6) arbitrary or capricious.

Minn.Stat. § 268.105, subd. 7(d) (2008). An appellate court will exercise its own independent judgment in analyzing whether an applicant is entitled to unemployment benefits as a matter of law. *Markel v. City of Circle Pines,* 479 N.W.2d 382, 384 (Minn.1992). The unemployment-benefits statute is remedial in nature and will be construed liberally in favor of awarding benefits to those unemployed through no fault of their own, while ineligibility standards will be interpreted narrowly. *Jenkins v. Am. Express Fin. Corp.,* 721 N.W.2d 286, 289 (Minn.2006).[1]

"Statutory interpretation is a question of law reviewed de novo." *Samuelson v. Prudential Real Estate,* 696 N.W.2d 830, 831 (Minn.App.2005). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature. Every law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (2008). "We are to read and construe a statute as a whole and must interpret each section in light of the surrounding sections to avoid conflicting interpretations." *Am. Family Ins. Group v. Schroedl,* 616 N.W.2d 273, 277 (Minn.2000). "[W]ords and phrases are construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a special meaning, or are defined in this chapter, are construed according to such special meaning or their definition." Minn.Stat. § 645.08(1) (2008). The legislature can indicate its intent in using a particular word in a statute by defining that word in the statute. *See Bd. of Educ. v. Sand,* 227 Minn. 202, 210, 34 N.W.2d 689, 694 (1948) (holding that where a particular statute defines its terms, resort to other statutes for definitions is not justified).

## I.

◼ Irvine first argues that she meets all of the eligibility conditions in Minn. Stat. § 268.085, subd. 1 (2008), and she contends that the statute does not require an employee to be in covered employment to be eligible for benefits. We examine the statutory language to assess Irvine's argument.

DEED will pay unemployment benefits to an applicant who meets certain requirements. Minn.Stat. § 268.069, subd. 1. First, the applicant must file an application for unemployment benefits and establish a benefit account in accordance with Minn. Stat. § 268.07. *Id.,* subd. 1(1). The applicant must also meet certain eligibility requirements, including having "an active benefit account." Minn.Stat. §§ 268.069, subd. 1(2), (3), (5) (eligibility requirements), 268.085, subd. 1(1) (requiring as a condition of eligibility "an active benefit account").

After the application is filed, DEED will issue a determination-of-benefit account, in which DEED calculates the applicant's weekly benefit amount and the maximum unemployment benefits available, if any, based on "all the *covered employment* in the base period." Minn.Stat. § 268.07, subd. 1(b) (emphasis added). To establish a benefit account, however, the applicant

---

1. While Irvine also cites the provisions in Minn.Stat. § 268.031, subd. 2 (Supp.2009), which codify the remedial purpose of the statute and the narrow construction of provisions that would preclude an applicant from receiving benefits, that statutory provision is effective August 2, 2009, and applies to all department determinations and ULJ decisions issued on or after the effective date. 2009 Minn. Laws ch. 78, art. 4, § 1, at 597, § 52, at 623. The decisions here occurred before that date.

must have earned a certain minimum dollar amount of "wage credits." Minn.Stat. § 268.07, subd. 2(a). "Wage credits" are defined as "the amount of wages paid within an applicant's base period for *covered employment.*" Minn.Stat. § 268.035, subd. 27 (2008) (emphasis added). "Generally, covered employment includes employment performed in Minnesota, unless it is excluded as noncovered employment." *Samuelson,* 696 N.W.2d at 832; *see* Minn.Stat. § 268.035, subd. 12 (2008) (defining "covered employment"), subd. 20 (2008) (designating certain employment as "noncovered employment").

Employment for a church that is operated primarily for religious purposes under IRC § 501(c)(3) and which has tax-exempt status under IRC § 501(a) is "noncovered employment." Minn.Stat. § 268.035, subd. 20(7). It is undisputed that St. John's Church met these criteria; thus, Irvine's employment with the church is noncovered employment. Such a church, however, may elect to have employment performed for it considered covered employment, and the commissioner has the discretion to approve such election. Minn.Stat. § 268.042, subd. 3(a). The ULJ found no evidence showing that St. John's Church had elected to do so. Further, while the church's employment manual indicated incorrectly that unemployment benefits might be available to church employees separated from employment through no fault of their own, representations by an employer regarding eligibility for unemployment benefits are not binding on DEED. *Scheeler v. Sartell Water Controls, Inc.,* 730 N.W.2d 285, 288 (Minn.App.2007); *see* Minn.Stat. § 268.069, subd. 2 (2008) ("any agreement between an applicant and an employer is not binding on the commissioner in determining an applicant's entitlement" to unemployment benefits). As the ULJ correctly ruled, Irvine's wage credits from her noncovered employment may not be used to establish an unemployment-benefit account.

Next, Irvine notes that DEED must maintain a tax account for each taxpaying employer. Minn.Stat. § 268.045, subd. 1(1) (2008). She reasons that because St. John's Church pays Medicare and social security taxes, it is a taxpaying employer that should have to pay unemployment taxes as well. Irvine also argues that when the employer must pay Medicare and social security taxes and the employee must pay income taxes on wages, a reasonable employee would assume that the employer would also have to pay unemployment taxes. The fact that the employer and employee pay other taxes is irrelevant to whether the employer must pay unemployment taxes; instead, the latter issue is decided under the provisions of unemployment-insurance law. *See, e.g.,* Minn.Stat. § 268.051 (2008) (providing for payment of unemployment-insurance taxes for employers with employees in covered employment).

Irvine further argues that because Minn.Stat. § 268.068 (2008) requires employers to post and maintain printed notice of the right to unemployment benefits, St. John's Church likewise should have been required to post notices or inform its employees that they did not have the right to unemployment benefits. But the statute contains no such requirement, and Irvine's argument would be more appropriately addressed to the legislature, which solely has the power to amend the law.

## II.

Irvine, citing the purpose of the statute and its remedial nature, argues that she should receive benefits because she was unemployed through no fault of her own. She cites the statutory provision that "[t]he public good is promoted by

providing workers who are unemployed through no fault of their own a temporary partial wage replacement to assist the unemployed worker to become reemployed." Minn.Stat. § 268.03, subd. 1 (2008). However, as discussed above, DEED will pay unemployment benefits only to an applicant who meets all of the requirements. Minn.Stat. § 268.069, subd. 1. Without having met the requirement of establishing an unemployment-benefit account, Irvine cannot obtain unemployment benefits, and no liberal construction of the statute in favor of its remedial purpose or narrow construction of ineligibility requirements can allow us to reach the result relator seeks. "There is no equitable or common law denial or allowance of unemployment benefits." Minn.Stat. § 268.069, subd. 3. Consequently, Irvine cannot prevail on her argument that she should receive unemployment benefits as a matter of equity.

## DECISION

The decision of the ULJ that Irvine cannot establish an unemployment-benefit account because she worked in noncovered employment is affirmed.

**Affirmed.**