*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1593**

Robert R. Adams,
Relator,

vs.

Select Communications, Inc.,
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed April 20, 2015
Affirmed
Johnson, Judge**

Department of Employment and
Economic Development
File No. 32505026-3

Robert R. Adams, Plymouth, Minnesota (pro se relator)

Select Communications, Inc., Plymouth, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Chutich, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Robert R. Adams was deemed temporarily ineligible for unemployment benefits because he received a separation payment from his former employer. He argues that his period of ineligibility should be limited because most of the money included in the separation payment is unrelated to his termination. We conclude that the entire separation payment is within the statutory definition of severance pay and, thus, affirm.

## FACTS

Adams was employed by Select Communications, Inc., from December 2005 until January 2014. At the time of his termination, he was the company's chief financial officer and was earning a base salary of $140,000.

In December 2012, Select sold a large portion of its business to a private-equity firm. The sale dramatically reduced the size and scope of Select's business operations. In January 2013, Select's chief executive officer (CEO) offered Adams a bonus "as appreciation for the work that [Adams] did . . . in helping build [the] company." The proposed bonus was to consist of an immediate payment of $45,000 and a future payment of $65,000 in May 2013, if Adams still was employed by Select at that time. But the parties never executed the necessary written agreement, and Adams did not receive the bonus.

In December 2013, Adams requested payment of the bonus. The parties drew up a second agreement, which was given to Adams on December 30, 2013. The second proposed agreement would have provided Adams with a lump-sum payment of $110,000.

The second proposed agreement stated that Adams had 21 days to sign and return the agreement. Adams did not sign and return the agreement within 21 days; he did not do so until January 27, 2014. Thus, Adams did not receive the bonus contemplated by the second proposed bonus agreement.

Adams's employment was terminated on January 31, 2014, because his position was eliminated. On February 10, 2014, Adams and Select executed a "Confidential Separation and Release Agreement," which provides, in part:

> [T]he Company will pay Employee separation pay in a gross amount before applicable withholdings, of One Hundred Thirty-One Thousand Five Hundred Thirty-Eight and 46/100 Dollars ($131,538.46) (the "Separation Pay"), which amount is approximately equal to eight (8) weeks of Employee's ending base salary plus the amount of the bonus ($110,000) that was offered through the proposed Bonus and Release Agreement that was presented to Employee in December 2013, but that was not accepted by Employee in a timely manner (this offer, the "Bonus Offer").

Select made the specified payment to Adams on February 20, 2014. Select's CEO testified before the unemployment law judge (ULJ) that the company was under no obligation to pay the $110,000 bonus but wanted to pay it to Adams because it was "the right thing to do."

After his termination, Adams applied for unemployment benefits. The department of employment and economic development made an initial determination that Adams was ineligible for benefits for approximately 48 weeks, until January 2015, because of the separation payment that he received in February 2014. The department determined that Adams was ineligible for 48 weeks by dividing his separation payment by his "last level

3

of regular weekly pay from the employer." *See* Minn. Stat. § 268.085, subd. 3(d)(2) (2014). After Adams filed an administrative appeal, a ULJ affirmed the initial determination. After Adams requested reconsideration, the ULJ modified her prior order in minor ways but affirmed with respect to the duration of Adams's ineligibility. Adams appeals by way of a writ of certiorari.

## D E C I S I O N

Adams argues that the ULJ erred by concluding that he is ineligible for unemployment benefits for approximately 48 weeks, until January 2015, because of the separation payment that he received in February 2014. He does not challenge the ULJ's ruling with respect to a portion of the separation payment, specifically, the $21,538.46 that reflects eight weeks of regular pay. Rather, he challenges the $110,000 portion, which reflects the bonus that Select first offered to him during his employment.

This court reviews a ULJ's benefits decision to determine whether the findings, inferences, conclusions of law, or decision are affected by an error of law or are "unsupported by substantial evidence in view of the entire record." Minn. Stat. § 268.105, subd. 7(d) (2014). If the relevant facts are not in dispute, we apply a *de novo* standard of review to the ULJ's interpretation of the unemployment statutes and to the ultimate question whether an applicant is eligible to receive unemployment benefits. *Irvine v. St. John's Lutheran Church*, 779 N.W.2d 101, 103 (Minn. App. 2010) (citing *Markel v. City of Circle Pines*, 479 N.W.2d 382, 384 (Minn. 1992)).

The department pays unemployment benefits to all applicants who meet the statutory eligibility requirements. Minn. Stat. § 268.069, subd. 1 (2014). Certain

4

payments that an applicant receives may delay the applicant's receipt of benefits. Minn. Stat. § 268.085, subd. 3. In this case, the ULJ determined that Adams is ineligible for benefits until January 2015 based on the following statute: "An applicant is not eligible to receive unemployment benefits for any week the applicant is receiving, has received, or will receive severance pay, bonus pay, or any other payments paid by an employer because of, upon, or after separation from employment." *Id.*, subd. 3(b). The ULJ determined that all of Adams's separation payment should be considered severance pay and, thus, included in the calculation of the duration of Adams's ineligibility. The question for this appeal is whether a portion of Adam's separation payment, the $110,000 consisting of a bonus for work that Adams performed before 2014, should be characterized as severance pay.

The question may be answered based on the plain language of the relevant statute. There are three reasons why the $110,000 bonus may be deemed severance pay: if it was paid either "[1] because of, [2] upon, or [3] after [Adams's] separation from employment." *Id.* Because the statute is phrased in the disjunctive, any one reason is sufficient. *See id.* Adams focuses his arguments on the first reason but ignores the third reason. In fact, Adams's employment was terminated on January 31, 2014, and Select made the separation payment on February 20, 2014. The $110,000 bonus clearly was paid by Select to Adams "after" his separation from employment. *See id.* Thus, the $110,000 bonus must be characterized as severance pay based on the third prong of the statute.

5

In light of that conclusion, we need not address Adams's argument that the $110,000 bonus is not severance pay on the ground that it was not paid "because of" his separation from employment and, thus, does not satisfy the first prong of the statute. *See id.* Even if we were to address that argument, however, we would reject it. The separation agreement describes the entire payment, including the $110,000 bonus, as "separation pay." The agreement expressly states that the total amount of separation pay is $131,538.46 and that it consists of two components: first, an amount "approximately equal to eight (8) weeks of Employee's ending base salary" and, second, "the amount of the bonus ($110,000) that was offered through the proposed Bonus and Release Agreement that was presented to Employee in December 2013, but that was not accepted by Employee in a timely manner (this offer, the 'Bonus Offer')." The agreement's characterization of the separation payment is significant because the agreement states that it "expressly supersedes and replaces the [December 2013] Bonus Offer and the parties understand and agree that Employee is not owed or entitled to any amounts or benefits pursuant to the Bonus Offer." The language of the agreement places the entire separation payment squarely within the first prong of the statutory definition of severance pay. *See id*. Thus, the separation agreement provides an additional reason why the $110,000 bonus delays Adams's eligibility until January 2015.

In the alternative, Adams argues that the $110,000 bonus should be deemed part of his last paycheck and, thus, part of his "last level of regular weekly pay from the employer." Minn. Stat. § 268.085, subd. 3(d)(2). Adams did not preserve this argument by presenting it to the ULJ. *See Peterson v. Northeast Bank*, 805 N.W.2d 878, 883

6

(Minn. App. 2011) (citing *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988)). In any event, Adams's alternative argument is without merit. The unemployment statutes define "last level of regular weekly pay" to include only those payments that are "part of the applicant's ongoing regular compensation." Minn. Stat. § 268.085, subd. 3(d). Adams's $110,000 bonus obviously was not part of his ongoing regular compensation. Thus, Adams's alternative argument would fail.

In sum, the ULJ did not err by determining that Adams's $110,000 bonus is severance pay that delays his eligibility for unemployment benefits.

**Affirmed.**