## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-0797

Clifford G. Menyweather,
Relator,

vs.

Fedtech, Inc.,
Respondent,

Department of Employment
and Economic Development,
Respondent.

**Filed December 7, 2015**
**Affirmed**
**Johnson, Judge**

Department of Employment and
Economic Development
File No. 33318420-3

Clifford G. Menyweather, Fridley, Minnesota (pro se relator)

Fedtech, Inc., Mounds View, Minnesota (respondent)

Lee B. Nelson, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent Department of Employment and Economic Development)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and Klaphake, Judge.[*]

## S Y L L A B U S

An applicant for unemployment benefits is temporarily ineligible if the applicant is entitled to severance pay in an amount that exceeds the weekly amount of

_____

[*]Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, §10.

unemployment benefits. Pursuant to section 268.085, subdivision 3(b), of the Minnesota Statutes, the period of ineligibility is "the period immediately following the later of the date of separation from employment or the date the applicant first becomes aware that the employer will be making a [severance] payment," regardless of "[t]he date the payment is actually made or received." This court's opinion in *Van de Werken v. Bell & Howell, LLC*, 834 N.W.2d 220 (Minn. App. 2013), was abrogated by the legislature's 2014 amendments to the statute.

## O P I N I O N

**JOHNSON** , Judge

Clifford G. Menyweather worked for Fedtech, Inc., for approximately five years until his employment was terminated pursuant to a separation agreement. The separation agreement obligated Fedtech to make a lump-sum severance payment to Menyweather in an amount that is equivalent to six weeks of his regular pay. Consequently, the Minnesota Department of Employment and Economic Development determined that Menyweather was ineligible for unemployment benefits during the six-week period immediately following his termination, and an unemployment-law judge agreed. We conclude that the department and the unemployment-law judge properly applied the statute governing eligibility for unemployment benefits if a terminated employee receives a severance payment. Therefore, we affirm.

## FACTS

Menyweather worked at Fedtech as a shop assistant from March 30, 2009, to December 5, 2014. On his last day of employment, Menyweather and the president of

2

Fedtech signed a separation agreement. The separation agreement provides that, if Menyweather has not rescinded the agreement within the time allowed for rescission, "the Company will pay [Menyweather] $4,080 as severance compensation." Because Menyweather's hourly wage was $17, the separation pay specified in the separation agreement is equal to six weeks of his regular pay. Menyweather received the severance payment (less tax withholdings) in a lump-sum payment on January 19, 2015.

Before he received the severance payment, Menyweather applied for unemployment benefits. The department made an initial determination that Menyweather was eligible for a weekly benefit of $376. At that time, the department was unaware that Menyweather had a contractual right to receive a severance payment. Menyweather submitted additional weekly requests for benefits, and the department paid him benefits for six weeks. Menyweather did not submit a weekly request for benefits after he received the lump-sum severance payment.

The department later learned of the severance payment and, on its own initiative, made a redetermination that Menyweather was ineligible for benefits during the six weeks immediately following his termination. The department also determined that Menyweather had been overpaid $1,880 and requested repayment. Menyweather filed an administrative appeal of the redetermination. At an evidentiary hearing before an unemployment-law judge (ULJ), Menyweather admitted that he knew on December 5, 2014, the date of his termination, that he would receive a severance payment; admitted that he received a severance payment on January 19, 2015; and admitted that the amount of the severance payment was $4,080, less taxes. The ULJ determined that Menyweather

3

was ineligible for unemployment benefits during the six-week period immediately following his termination because he had received a severance payment in an amount equal to six weeks of his regular pay. In addition, the ULJ determined that Menyweather was required to repay the overpayment of $1,880. After Menyweather requested reconsideration, the ULJ affirmed the prior decision. Menyweather appeals.

## ISSUE

Did the ULJ err by determining that Menyweather was ineligible for unemployment benefits during the six-week period immediately following his termination in light of the separation agreement, which he signed on the date of his termination and which gave him a right to a severance payment in an amount equal to six weeks of regular pay?

## ANALYSIS

Menyweather contends that the ULJ erred by determining that he was ineligible for unemployment benefits during the six-week period immediately following his termination.

This court reviews a ULJ's benefits decision to determine whether the findings, inferences, conclusions of law, or decision are affected by an error of law or are "unsupported by substantial evidence in view of the entire record." Minn. Stat. § 268.105, subd. 7(d) (2014). If the relevant facts are not in dispute, we apply a *de novo* standard of review to the ULJ's interpretation of the unemployment statutes and to the ultimate question whether an applicant is eligible to receive unemployment benefits.

4

*Irvine v. St. John's Lutheran Church*, 779 N.W.2d 101, 103 (Minn. App. 2010) (citing

*Markel v. City of Circle Pines*, 479 N.W.2d 382, 384 (Minn. 1992)).

The department pays unemployment benefits to applicants who meet the statutory eligibility requirements. Minn. Stat. § 268.069, subd. 1 (2014). But an eligible applicant's unemployment benefits may be reduced or postponed if the applicant is receiving vacation or sick pay, severance pay, or certain types of retirement pay. *See* Minn. Stat. § 268.085, subd. 3(a)-(c) (2014). The statute governing severance pay provides as follows:

> An applicant is not eligible to receive unemployment benefits for any week the applicant is receiving, has received, or will receive severance pay, bonus pay, or any other payments paid by an employer because of, upon, or after separation from employment.
>
> . . . .
>
> Payments under this paragraph are applied to the period immediately following the later of the date of separation from employment or the date the applicant first becomes aware that the employer will be making a payment. The date the payment is actually made or received, or that an applicant must agree to a release of claims, does not affect the application of this paragraph.

*Id.*, subd. 3(b). If an applicant receives severance pay in a lump sum, the severance pay is applied to a number of weekly periods that is determined by dividing the amount of the lump-sum severance payment "by the applicant's last level of regular weekly pay from the employer." *Id.*, subd. 3(d)(1). An applicant's benefits must be reduced by the per-week amount of severance pay allocated to that period. *Id.*, subd. 3(e). "[I]f the [severance] payment with respect to a week is equal to or more than the applicant's

5

weekly unemployment benefit amount, the applicant is ineligible for benefits for that week." *Id.*

In this case, there is no dispute that Menyweather received severance pay "because of" and "after" the termination of his employment with Fedtech. *See id.*, subd. 3(b). There also is no dispute that Menyweather received severance pay equal to six weeks of his regular pay and that the weekly amount of severance pay exceeds the weekly benefit. *See id.* The parties' dispute concerns *when* Menyweather should be ineligible for unemployment benefits. The ULJ determined that he was ineligible during the six-week period immediately following his termination. Menyweather argues on appeal that he was eligible for benefits during that period and that he became ineligible after receiving the lump-sum severance payment on January 19, 2015.

The parties' dispute is easily resolved by the plain language of the third paragraph of subdivision 3(b) of section 268.085. The legislature determined that a lump-sum severance payment must be "applied to the period immediately following the later of the date of separation from employment or the date the applicant first becomes aware that the employer will be making a payment." *Id.* In this case, the relevant date is December 5, 2014, which was both the date of the termination of Menyweather's employment and the date on which Menyweather and Fedtech entered into the separation agreement. The next sentence of subdivision 3(b) confirms the prior sentence: "The date the payment is actually made or received, or that an applicant must agree to a release of claims, does not affect the application of this paragraph." *Id.* Accordingly, it is irrelevant that Menyweather received his lump-sum severance payment on January 19, 2015. Thus, the

6

ULJ properly applied the statute when he determined that Menyweather was ineligible for unemployment benefits during the six-week period immediately following his termination.

The department notes that Menyweather's argument might have had merit under a prior version of the statute and the caselaw interpreting the prior version. In *Van de Werken v. Bell & Howell, LLC*, 834 N.W.2d 220 (Minn. App. 2013), this court considered a case in which a terminated employee and his former employer agreed *three months after* the employee's termination that the company would pay him eight weeks of severance pay in biweekly installments. *Id.* at 221. The terminated employee had applied for and received unemployment benefits before entering into the agreement with his former employer. *Id.* The ULJ determined that the employee was ineligible for unemployment benefits during the period immediately following his termination, even though his right to severance pay was not secured until a later date. *Id.* We reversed, reasoning that "severance-pay ineligibility for unemployment benefits is more appropriately applied to the time period during which the applicant is actually receiving the payments." *Id.* at 222.

If we were to apply *Van de Werken* to Menyweather's appeal, we might conclude that Menyweather was eligible for unemployment benefits before he received his lump-sum severance payment on January 19, 2015. But the statute in effect at the time of *Van de Werken* no longer is in effect. In 2014, the legislature amended section 268.085, subdivision 3(b), in significant ways. *See* 2014 Minn. Laws ch. 251, art. 1, § 4, at 846. The most significant change for purposes of this appeal was the addition of the third

7

paragraph of subdivision 3(b), which contains specific provisions concerning how to determine the timing of the period of ineligibility. *Id.* Before 2014, the statute did not include any provisions concerning when an applicant is ineligible based on the receipt of severance pay. *See* Minn. Stat. § 268.085, subd. 3 (2012). In the absence of guidance from the legislature, this court held in *Van de Werken* that an applicant is ineligible for unemployment benefits while receiving a series of severance payments. 834 N.W.2d at 222. But the legislature effectively abrogated *Van de Werken* with its 2014 amendments to section 268.085, subdivision 3(b), and those amendments apply to this case.

## DECISION

The ULJ did not err by determining that Menyweather was ineligible for unemployment benefits during the six-week period immediately following the termination of his employment and by determining that there has been an overpayment that Menyweather must repay.

**Affirmed.**