*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0493**

Dawn Campbell,
Relator,

vs.

MVP Realty Advisors, LLC,
Respondent,

Department of Employment and
Economic Development,
Respondent.

**Filed December 5, 2016
Affirmed
Johnson, Judge**

Department of Employment and
Economic Development
File No. 34024527-2 and/or 34024527-3

Stephen W. Cooper, Stacey R. Everson, The Cooper Law Firm, Chtd., Minneapolis, Minnesota (for relator)

MVP Realty Advisors LLC, c/o Amcheck Tax Service, Phoenix, Arizona (respondent employer)

Lee B. Nelson, Keri A. Phillips, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent department)

Considered and decided by Johnson, Presiding Judge; Hooten, Judge; and Tracy M. Smith, Judge.

**JOHNSON**, Judge

Dawn Campbell entered into a confidential settlement agreement with her former employer while she was receiving unemployment benefits. The department of employment and economic development determined that she was temporarily ineligible for benefits because she received a payment in connection with the settlement agreement. An unemployment law judge (ULJ) upheld the determination of ineligibility on the ground that the payment is subject to the Federal Insurance Contributions Act (FICA) tax. We conclude that the ULJ did not err and, therefore, affirm.

## FACTS

Campbell worked for MVP Realty Advisors, LLC, from August 2014 until March 31, 2015. Her salary at the end of her employment was $138,000 per year. After her employment ended, Campbell applied for and began receiving unemployment benefits in the amount of $640 per week.

On April 29, 2015, Campbell and MVP entered into a confidential written settlement agreement, which required MVP to make a payment to Campbell.

In December 2015, the department issued a determination of ineligibility for unemployment benefits, which states that Campbell received a separation payment that made her ineligible for benefits for a period of several weeks. Campbell filed an administrative appeal. A ULJ conducted an evidentiary hearing. Neither Campbell nor MVP revealed the nature of the confidential settlement agreement or its non-financial terms. Campbell and MVP stipulated that the settlement agreement "resolve[d] issues

2

other than wages, salary, or commissions, or compensation for work done or to be done." MVP's office manager testified that MVP withheld income taxes and FICA taxes from the settlement payment because that is its standard practice for all payments to employees and former employees. Campbell's attorney argued to the ULJ that MVP's standard practice of withholding taxes from all such payments is not dispositive of the question whether the settlement payment is subject to FICA tax.

The ULJ issued a written decision in which he stated, "The evidence adduced at the hearing shows that Campbell did receive a payment in the gross amount of $20,000 after her separation from employment and this payment was subject to FICA tax." The ULJ further determined that the payment applies to the period beginning April 1, 2015, and should have been deducted from Campbell's weekly benefits, resulting in an overpayment of $4,480. Campbell requested reconsideration, and the ULJ affirmed his earlier decision. Campbell appeals.

## D E C I S I O N

Campbell argues that the ULJ erred by determining that she was temporarily ineligible for unemployment benefits during the period immediately following her receipt of the payment MVP made pursuant to the confidential settlement agreement.

This court reviews a ULJ's benefits decision to determine whether the findings, inferences, conclusions of law, or decision are affected by an error of law or are "unsupported by substantial evidence in view of the entire record." Minn. Stat. § 268.105, subd. 7(d) (Supp. 2015). "If the relevant facts are not in dispute, we apply a *de novo* standard of review to the ULJ's interpretation of the unemployment statutes and to the

3

ultimate question whether an applicant is eligible to receive unemployment benefits."

*Menyweather v. Fedtech, Inc.*, 872 N.W.2d 543, 545 (Minn. App. 2015).

In general, the department pays unemployment benefits to applicants who meet the statutory eligibility requirements. Minn. Stat. § 268.069, subd. 1 (2014). But an eligible applicant's benefits may be reduced or postponed if the applicant has received severance pay. *See* Minn. Stat. § 268.085, subd. 3(b) (2014). The statute governing severance payments provides as follows:

> An applicant is not eligible to receive unemployment benefits for any week the applicant is receiving, has received, or will receive severance pay, bonus pay, or any other payments paid by an employer because of, upon, or after separation from employment.
>
> This paragraph only applies if the payment is:
>
> (1)  considered wages under section 268.035, subdivision 29; or
>
> (2)  subject to the Federal Insurance Contributions Act (FICA) tax imposed to fund Social Security and Medicare.
>
> Payments under this paragraph are applied to the period immediately following the later of the date of separation from employment or the date the applicant first becomes aware that the employer will be making a payment. The date the payment is actually made or received, or that an applicant must agree to a release of claims, does not affect the application of this paragraph.

*Id.* The same statute contains additional provisions to guide a ULJ in determining the consequences of a severance payment:

> If an applicant receives severance pay in a lump sum, the severance pay is applied to a number of weekly periods that is determined by dividing the amount of the lump-sum severance

4

payment "by the applicant's last level of regular weekly pay from the employer." [Minn. Stat. § 268.085], subd. 3(d)(1). An applicant's benefits must be reduced by the per-week amount of severance pay allocated to that period. *Id.*, subd. 3(e). "[I]f the [severance] payment with respect to a week is equal to or more than the applicant's weekly unemployment benefit amount, the applicant is ineligible for benefits for that week." *Id.*

*Menyweather*, 872 N.W.2d at 546 (second and third alterations in original).

In this case, the ULJ determined that Campbell received a severance payment equivalent to approximately seven and one-half weeks of salary and, consequently, that the severance payment should be applied to Campbell's unemployment benefits for eight weeks, beginning on April 1, 2015. Campbell contends that the ULJ erred on the ground that the ineligibility provision of section 268.085, subdivision 3(b), does not apply because of its second sentence, which states that the subdivision applies only if a severance payment (1) is "considered wages," as defined elsewhere in chapter 268, or (2) is "subject to" FICA. *See* Minn. Stat. § 268.085, subd. 3(b). The ULJ did not make a determination concerning the first part of that sentence, *i.e.*, whether the payment from MVP to Campbell is considered wages. But the ULJ did make a determination concerning the second part of that sentence by determining that the payment from MVP to Campbell is subject to FICA tax. If that determination is correct, it would be a sufficient basis for the ULJ's determination that Campbell is temporarily ineligible for benefits for an eight-week period beginning on April 1, 2015.

Whether a payment from an employer to a former employee is subject to FICA tax is determined with reference to federal law. By federal statute, FICA tax applies to "wages

5

(as defined in section 3121(a)) received by [an individual] with respect to employment (as defined in section 3121(b))." 26 U.S.C. § 3101(a) (2012). The term "wages" is defined by federal statute to mean, subject to certain exceptions, "all remuneration for employment, including the cash value of all remuneration (including benefits) paid in any medium other than cash." 26 U.S.C. § 3121(a) (2012). The term "employment" is defined by federal statute to mean, in relevant part and subject to certain exceptions, "any service, of whatever nature, performed . . . by an employee for the person employing him" or any service "which is designated as employment or recognized as equivalent to employment under an agreement entered into under section 233 of the Social Security Act." 26 U.S.C. § 3121(b)(A), (C). The United States Court of Appeals for the Eighth Circuit has stated that "these definitions are worded so as to 'import breadth of coverage.'" *Mayberry v. United States*, 151 F.3d 855, 860 (8th Cir. 1998) (quoting *Social Sec. Bd. v. Nierotko*, 327 U.S. 358, 365, 66 S. Ct. 637, 641 (1946)). More specifically, the Eighth Circuit has stated that the statutory definition of "employment" includes "'not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer.'" *Id.* (quoting *Nierotko*, 327 U.S. at 365-66, 66 S. Ct. at 641). Accordingly, the Eighth Circuit concluded in *Mayberry* that a settlement payment made by a company to a former employee was subject to FICA tax. *Id.* at 857, 860.

Campbell contends that the settlement payment she received from MVP is not subject to FICA tax because, she asserts, the payment is not wages. Her contention is flawed because federal law concerning the scope of the applicability of FICA tax is broader than she assumes. FICA tax applies not only to wages but also to other forms of

6

remuneration that relate to "'the entire employer-employee relationship.'" *Id.* at 860 (quoting *Nierotko*, 327 U.S. at 365-66, 66 S. Ct. at 641). Because the settlement agreement is confidential, the agency record is lacking details concerning the precise nature and purpose of the settlement payment. But the agency record contains ample evidence to support an inference that the settlement payment is related in some way to Campbell's prior employment at MVP. That fact is sufficient to establish that the settlement payment is subject to FICA tax. *See id.*

Furthermore, in *Mayberry*, the Eighth Circuit reasoned in part that the settlement payment was subject to FICA tax because it was subject to federal income tax. *Id.* (citing 26 U.S.C. § 61(a)). In general, a settlement payment resolving a lawsuit or potential lawsuit is subject to federal income tax unless the payment is excluded from gross income by a particular provision of the tax code. *See* 26 U.S.C. § 61(a) (2012); *Commissioner of Internal Revenue v. Schleier*, 515 U.S. 323, 327, 115 S. Ct. 2159, 2163 (1995). Campbell has not identified any particular exclusion that applies to the settlement payment that she received. One possible exclusion is for settlement payments resolving claims based on "personal physical injuries or physical sickness." *See* 26 U.S.C. § 104(a)(2) (2012); *see also* Internal Revenue Serv., *Audit Techniques Guide: Lawsuits, Awards, and Settlements* 1, 8 (2011), https://www.irs.gov/pub/irs-utl/lawsuitesawardssettlements.pdf. In this case, the agency record does not contain any evidence that Campbell sustained physical injuries or physical sickness, and there is no indication that Campbell's settlement payment is excluded from gross income for any other reason.

Campbell also contends that the ULJ erred by relying on evidence that MVP withheld FICA tax from the settlement payment it made to Campbell. Campbell contends that MVP's withholding of FICA taxes from Campbell's settlement payment is not determinative, especially because the withholding was done pursuant to a standard company practice. The ULJ did not err by considering the evidence, which, though not determinative, has some tendency to prove that the payment is subject to FICA tax. The evidence does *not* tend to prove that the payment is *not* subject to FICA tax. In any event, MVP's standard practice is not a significant factor in our analysis of the issue, which is based primarily on the principles of federal law discussed above and the simple fact that the settlement payment related to Campbell's former employment with MVP.

In sum, the ULJ did not err by determining that Campbell was temporarily ineligible for unemployment benefits because she received a settlement payment from MVP that is subject to FICA tax. In light of that conclusion, we need not consider whether the settlement payment is "considered wages under section 268.035, subdivision 29." *See* Minn. Stat. § 268.085, subd. 3(b)(2).

**Affirmed.**